```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| TALCOTT RESOLUTION LIFE INSURANCE COMPANY | : |
| v. | : Civil Action No. DKC 19-1796 |
| CARVET E. CARLYLE, *et al.* | : |

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | : |
| v. | : Civil Action No. DKC 20-1840 |
| CARVET E. CARLYLE, *et al.* | : |

**MEMORANDUM OPINION**

The instant case is a consolidation of two interpleader actions in which Plaintiffs, Talcott Resolution Life Insurance Company ("Talcott") and American General Life Insurance Company ("American General"), both issuers of annuities to Defendants Carvet E. Carlyle ("Ms. Carlyle") and Larry D. Martin ("Mr. Martin"), seek to resolve competing claims to such annuities. Presently pending for resolution in the Talcott case are: (1) a motion for entry of default as to Mr. Martin filed by Talcott (ECF No. 23); (2) a motion for entry of default and final judgment against Mr. Martin filed by Ms. Carlyle (ECF No. 24); and (3) a motion to be dismissed from further proceedings filed by Talcott. (ECF No. 25). Presently pending for resolution in the American

General case are: (1) a motion for entry of default as to Mr. Martin filed by American General (ECF No. 40); (2) a motion for entry of default and final judgment against Mr. Martin filed by Ms. Carlyle (ECF No. 46); and (3) a motion for discharge from further liability filed by American General. (ECF No. 47). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions for entry of default will be denied, except for Talcott's which will be granted, and both motions for discharge will be denied without prejudice.

**I.   Background**

   **A.   Talcott Annuity**

Unless otherwise noted, the facts outlined here are set forth in the Talcott complaint. (ECF No. 1). In February 2004, Talcott issued Ms. Carlyle and Mr. Martin an annuity contract (the "Talcott Annuity") in which Mr. Martin was the Annuitant. At the time, Ms. Carlyle and Mr. Martin were a couple residing together in Baltimore, Maryland. Some years later, the couple terminated their relationship and ceased living together. Ms. Carlyle remained in Maryland while Mr. Martin moved to and now resides in New York.

In January 2016, Talcott received a request for a full surrender of the annuity contract.[1] At the time the surrender

---

[1] A successful surrender request has the effect of releasing the saved value of the policy to the owner(s).

2

request was received, the value of the Talcott Annuity was $43,707.51. The request contained what appeared to be the signatures of both Ms. Carlyle and Mr. Martin and instructed that the proceeds be electronically deposited into an account owned solely by Mr. Martin at J.P. Morgan Chase Bank. Because Ms. Carlyle was not a joint owner of this bank account, the requirements for electronically depositing funds into an account were not met. Talcott instead mailed a check in the amount of $43,707.51, payable to both Ms. Carlyle and Mr. Martin, to the address on record. The check was cashed, and the endorsement side of the check showed what appeared to be the signatures of both Ms. Carlyle and Mr. Martin.

Shortly thereafter, Ms. Carlyle informed Talcott that she did *not* sign the surrender request or the cashed check and that the signatures on those documents were forged. She sent Talcott an Affidavit of Forgery in December 2018. (ECF No. 1-3). Talcott forwarded the affidavit to J.P. Morgan Bank and the bank subsequently returned the funds to Talcott.

On December 21, 2018, Talcott sent a letter to both Ms. Carlyle and Mr. Martin stating that it wished to return the funds and could do so pursuant to receipt of a mutual written agreement directing disbursement of the funds or pursuant to a court order. (ECF No. 1-4). A similar letter was again sent to Defendants on March 1, 2019. Neither responded. Talcott filed its interpleader

3

complaint on June 19, 2019, stating that "each of Ms. Carlyle and Mr. Martin have separately asserted to [the company] a claim of entitlement to the entirety of the [p]roceeds" and that it "has no basis of knowing who is entitled to what portion of the [proceeds]." (ECF No. 1, at 6).  On November 11, 2019, Talcott moved to deposit the proceeds of the annuity into the court registry.  (ECF No. 7).  Ms. Carlyle filed her answer on November 15, 2019.  (ECF No. 6).  She then filed a cross-complaint against Mr. Martin on November 17, 2019.  (ECF No. 12).  On January 13, 2020, Ms. Carlyle filed a motion for entry of default and final judgment against Mr. Martin.  (ECF No. 13).  On January 29, 2020, the court denied this motion on the ground that "service was improper as to Cross-Defendant Martin."  (ECF No. 15).  On April 15, 2020, the court granted Talcott's motion to deposit the proceeds of the Talcott Annuity into the court registry.  (ECF No. 19).  On July 7, 2020, Talcott moved for entry of an order of default as to Mr. Martin, (ECF No. 23), as did Ms. Carlyle.  (ECF No. 24).  On July 16, 2020, Talcott filed a motion for dismissal from further proceedings and discharge from further liability. (ECF No. 25).

    **B.**    **American General Annuity**

Unless otherwise noted, the facts outlined here are set forth in the American General complaint.  (ECF No. 30).  In addition to the Talcott annuity, Ms. Carlyle and Mr. Martin had also jointly

4

purchased an annuity from American General[2] in January 2004 (the "American General Annuity").  In October 2015, Mr. Martin contacted American General inquiring about the process for withdrawing funds from the annuity.  Ms. Carlyle promptly notified American General that she was initiating litigation regarding the annuity and that no distributions should be made.

On August 4, 2020, American General filed its interpleader complaint.  (ECF No. 30).  At the time the complaint was filed, the annuity was valued at $8,862.28.  On August 14, 2020, Ms. Carlyle answered, (ECF No. 32), filed a cross-complaint against Mr. Martin (ECF No. 33), and Judge Bennett issued an order consolidating the two interpleader actions.  (ECF No. 34).  On August 20, 2020, American General filed a motion for entry of default as to Mr. Martin.  (ECF No. 40).  On September 15, 2020, Ms. Carlyle filed a motion for entry of default and final judgment against Mr. Martin.  (ECF No. 46).  On September 23, 2020, American General submitted a motion for discharge from further liability. (ECF No. 47).

## II. Standard of Review

Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

---

[2] The annuity was purchased from AIG Annuity Insurance Company which has since been merged into American General Life Insurance Company.

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Although this rule refers to entry of default by the clerk, "it is well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982).  "It is axiomatic that service of process must be effective under the [Fed.R.Civ.P.] before a default or a default judgment may be entered against a defendant." *Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D.Md. 1996).  Plaintiff bears the burden of establishing that service of process was effective. *Ayres v. Ocwen Loan Servicing, LLC*, 129 F.Supp.3d 249, 261 (D.Md. 2015).

Fed.R.Civ.P. 5(a) provides that a pleading must be served on a party in default in the manner prescribed by Rule 4. Fed.R.Civ.P. 4(e)(2) permits service on an individual by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Alternatively, an individual may be served by any means allowed by the state where the district court is located or the state where service is to be effected.  Fed.R.Civ.P. 4(e)(1).  Under Maryland law, service can be effected:

> (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery--show to whom, date, address of delivery.'

Md. Rules 2-121(a).  Under New York law, service on an individual can be effected:

> (1) by delivering the summons within the state to the person to be served; or (2) by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person at his or her last known residence or . . . actual place of business[.]

N.Y. C.P.L.R. 308.  N.Y. C.P.L.R. 308(4) further provides that

> where service under paragraphs one and two cannot be made with due diligence, [an individual may be served] by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]

This alternate method of service is commonly referred to as "nail and mail" service.  *Greene Major Holdings, LLC v. Trailside at Hunter, LLC*, 148 A.D.3d 1317, 1320 (N.Y.App.Div. 2017).  While the

7

precise manner in which due diligence is to be accomplished is "not rigidly prescribed[,]" the requirement that due diligence be exercised "must be strictly observed, given the reduced likelihood that a summons served pursuant to [N.Y. C.P.L.R. 308(4)] will be received[.]"  *Id*.  "What constitutes due diligence is determined on a case-by-case basis, focusing not on the quantity of the attempts at personal delivery, but on their quality[,]" and the plaintiff, who bears the burden of establishing that personal jurisdiction over the defendant was acquired, must show "that the process server made genuine inquiries about the defendant's whereabouts and place of employment[.]"  *Id*., at 1320-21 (internal citations omitted).  *Compare Greene Major Holdings, LLC. v. Trailside at Hunter, LLC,* 148 A.D.3d 1317, 1320 (N.Y.App.Div. 2017) (holding that the trial court did not abuse its discretion in ruling that the plaintiff did not establish due diligence when the process server attempted to serve the defendant at a particular residence three separate times, all of which were weekdays and two of which were during hours the defendant could be expected to be at work), *with Est. of Waterman v. Jones*, 843 N.Y.S.2d 462, 464-65 (N.Y.App.Div. 2007) ("Due diligence may be satisfied with a few visits on different occasions and at different times to the defendant's residence or place of business when the defendant could reasonably be expected to be found at such location at those times."); *Lemberger v. Khan*, 794 N.Y.S.2d 416, 416 (N.Y.App.Div

8

2005) (finding three attempts to serve the defendant by process server at his home satisfied the due diligence requirement).

**III.  Analysis**

    **A.  Talcott Annuity**

    **1.  Talcott's Motion for Entry of Default**

Talcott filed a motion for entry of default against Defendant Martin on July 7, 2020.  (ECF No 23).  Talcott states that Mr. Martin "was personally served on June 4, 2020."  (*Id.*, at 1).  The affidavit of service submitted by Talcott confirms that on June 4, 2020, at 11:55 AM, substitute service was made on Sharon Martin, an individual between the age of 50 and 60 years old, at Mr. Martin's home address in Mount Vernon, New York.  (*See* ECF No. 21).  Md. Rules 2-121(a)(2) permits service on an individual by "leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion."  Thus, service here was proper under Maryland law and satisfies Rule 4.  Therefore, the court will grant Talcott's motion for entry of default as to Mr. Martin.

    **2.  Ms. Carlyle's Motion for Entry of Default and Final Judgment**

Ms. Carlyle filed a motion for entry of default and final judgment against Mr. Martin on July 7, 2020.  (ECF No. 24).  She asserts that "[o]n June 10, 2020, a copy of [the] Cross-Complaint was served by the Cross-Plaintiff Carlyle upon Defendant Larry

9

Martin via first class mail at his residence located at 229 South 7th Avenue, Apt. 5k, Mount Vernon, NY 10550." (*Id.*, at 2). As the court stated in its previous order, "Rule 4 is not satisfied by simply mailing." (ECF No. 15). Similarly, neither New York nor Maryland law is satisfied by simple mailing. Therefore, the court will again deny Ms. Carlyle's motion for entry of default and final judgment and provide her with another opportunity to effect service of process on Defendant Martin.

**B.  American General Annuity**

**1.  American General's Motion for Entry of Default**

Plaintiff American General filed a motion for entry of default against Mr. Martin on August 20, 2020. (ECF No. 40). It states that "[o]n July 8, 2020, Martin was served by process server. [ECF No. 38]. Therefore, pursuant to Fed.R.Civ.P. 12(a)(1)(A)(i), Martin's response to the Complaint for Interpleader Relief was due by Jul[y] 29, 2020." (*Id.*, at 2). The affidavit of service shows that American General utilized the "nail and mail" method of service: On July 8, 2020, a process server affixed a copy of the summons, complaint, and corporate disclosure to the door of Mr. Martin's New York residence and mailed a copy of the same to Mr. Martin's residence that day. (*See generally* ECF No. 38). Thus, the court must determine whether American General has established the requisite due diligence required to permit "nail and mail" service under N.Y. C.P.L.R. 308(4).

10

The affidavit first states that the "nail and mail" service was performed on July 8, 2020 at 8:43 p.m. (*Id*.). It then goes on to state that the summons and complaint were affixed to the door of Mr. Martin's residence after "Deponent was unable, with due diligence to find the recipient, or person of suitable age or discretion, thereat, having called there" at 8:43 a.m. on July 8, 2020, 11:03 a.m. on July 9, 2020, and 7:51 a.m. on July 10, 2020. It also notes that the process server mailed the summons and complaint to Mr. Martin's home address on Wednesday, July 8, 2020.

Thus, the affidavit seems to indicate that both the nailing and mailing occurred upon the process server's very first attempt to serve Mr. Martin on July 8, 2020.[3] The second and third attempts at service, on July 9, 2020 and July 10, 2020 came only *after* the "nail and mail" service was already completed. Given that the "nail and mail" service occurred during the process server's very first attempt at service it cannot reasonably be said that the process server was unable, with due diligence, to find Mr. Martin. Hence, the service falls short of meeting the due diligence

---

[3] It is unclear whether the process server attempted service at 8:43 a.m. as indicated near the bottom of the affidavit of service or at 8:43 p.m. as indicated in the first paragraph of the affidavit of service. This detail is not insignificant as it is directly relevant to whether the defendant could have been reasonably expected to be at work at the time, a factor considered in evaluating whether due diligence was satisfied. If the attempt was in fact made at 8:43 a.m., then Mr. Martin could reasonably have been expected to be at work at the time.

requirement of N.Y. C.P.L.R. 308(4). *See Est. of Waterman*, 843 N.Y.S.2d at 464-65 ("Due diligence may be satisfied with a few visits on different occasions and at different times to the defendant's residence or place of business when the defendant could reasonably be expected to be found at such location at those times."). Plaintiff has also not shown "that the process server made genuine inquiries about [Mr. Martin's] whereabouts and place of employment[.]" *Greene Major Holdings, LLC*, 148 A.D.3d at 1321. Thus, American General has not met its burden of establishing that service was properly effectuated under either New York law, Maryland law, or Fed.R.Civ.P. 4. Accordingly, the court will deny American General's motion for entry of default and provide it with another opportunity to effect service of process on Defendant Martin.

    **2. Ms. Carlyle's Motion for Entry of Default and Final Judgment**

On September 15, 2020, Ms. Carlyle filed a motion for entry of default and final judgment as to Mr. Martin. (ECF No. 46). Ms. Carlyle states that on "August 14, 2020, a copy of [the] Cross-Complaint was served by the Cross-Plaintiff Carlyle upon Defendant Larry Martin via first class mail at his residence located at 229 South 7th Avenue, Apt. 5k, Mount Vernon, NY 10550." (*Id.*, at 2). As previously stated, Rule 4 is not satisfied by service via first class mail. Therefore, the court will deny Ms. Carlyle's motion

12

for entry of default and final judgment and provide her with another opportunity to effect service of process on Cross-Defendant Martin.

### C. Plaintiffs' Motions for Discharge

Because the cases are consolidated, the court will not adjudicate the pending motions for discharge filed by Plaintiffs, (ECF Nos. 25 and 47), until all of the parties cure the issues of defective service.  Therefore, the court will deny Plaintiffs' motions for discharge at this time.

## IV. Conclusion

For the foregoing reasons, three of the motions for entry of default (ECF Nos. 24, 40, 46), will be denied, and Talcott's (ECF No. 23), will be granted, and both motions for discharge from further liability (ECF Nos. 25 and 47), will be denied without prejudice.

                                           /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge