IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TALCOTT RESOLUTION LIFE INSURANCE COMPANY | : | |
| v. | : | Civil Action No. DKC 19-1796 |
| CARVET E. CARLYLE, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consolidated interpleader action are the motion for discharge from further liability filed by American General Life Insurance Company, (ECF No. 69), and the motion for default judgment as to Larry D. Martin filed by Carvet E. Carlyle, (ECF No. 70). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion for discharge from further liability will be granted and the motion for default judgment will be deferred. Talcott Resolution Life Insurance Company will also be discharged. Attorney's fees and costs in the amount of $5,860.97 will be disbursed to Plaintiff Talcott from the Talcott Annuity funds.

## I. Background

### A. Factual History

The factual allegations in this case, as set forth in the Talcott complaint, (ECF No. 1), are outlined in more detail in a

prior opinion.  (*See* ECF No. 48).  Unless otherwise noted, the allegations as outlined in this opinion are set forth in the Talcott Complaint, (ECF No. 1); Ms. Carlyle's Talcott cross-complaint, (ECF No. 12); and Ms. Carlyle's American General cross-complaint, (ECF No. 33).

In 2004, Defendants Larry Martin and Carvet Carlyle purchased two annuity contracts.  (ECF Nos. 1, at ¶8-11; 30, at ¶6).  One was a variable annuity contract purchased from Talcott for a premium of $50,000.  (ECF No. 1, at ¶8).  The other was a single premium deferred annuity purchased from American General for $6,000.  (ECF No. 30, at 1).  According to Ms. Carlyle, the annuities were purchased with her money, and Mr. Martin was added as a co-owner.  (ECF Nos. 12, at ¶5; 33, at ¶2).  At the time of the purchases, the Defendants were a couple.  They have since separated.

Despite their separation, Ms. Carlyle and Mr. Martin remain co-owners of the annuities.  Again, according to Ms. Carlyle, she attempted remove Mr. Martin as a co-owner of the Talcott Annuity. (ECF No. 12, at ¶10).  Although Mr. Martin agreed to the removal, Ms. Carlyle's bank lost the ownership change paperwork and Mr. Martin was never removed.  (ECF No. 12, at ¶11).

In 2016, Mr. Martin submitted a request to Talcott for the full surrender of the Talcott Annuity.  At that time, its value was $43,707.51.  (ECF No. 1, at ¶17).  The request appeared to

contain signatures from both Mr. Martin and Ms. Carlyle.  (ECF No. 1, at ¶14).  Talcott mailed Mr. Martin a check payable to both of them, which was cashed and appeared to be endorsed by both Mr. Martin and Ms. Carlyle.  (ECF No. 1, at ¶18).  Subsequently, Ms. Carlyle submitted an affidavit asserting that Mr. Martin had forged her signature on the application and the check.  (ECF No. 1, at ¶21).  The bank where Mr. Martin deposited the Talcott Annuity funds returned the money to Talcott.  (ECF No. 1, at ¶23).  After this, Talcott twice sent letters to Defendants asking them to reach a settlement on the payout of the funds.  Defendants did not respond to either request.[1]  (ECF Nos. 1, at ¶23, 24, 27).

Similarly, in 2015 Mr. Martin contacted American General regarding the process for withdrawing funds from the American General Annuity.  (ECF No. 30, at ¶8).  Ms. Carlyle shortly thereafter notified American General that she was initiating litigation against Mr. Martin regarding the American General annuity and requested that no distribution be made.  (ECF No. 30, ¶9).  Both Defendants have demanded the proceeds of the American General annuity.  (ECF No. 30, at ¶10).

---

[1] The only response Talcott seems to have had to its letters was from an individual purporting to be Ms. Carlyle's representative, who had an "inquiry" about Talcott's first letter. (ECF No. 1, at ¶25).

### B. Procedural Background

In 2019, Talcott filed this interpleader action to resolve the claims to the Talcott Annuity pursuant to 28 U.S.C. § 1335. (ECF No. 1).  It moved to deposit the proceeds of the annuity into the court registry.  (ECF No. 7).  That motion was granted.  (ECF No. 19).  Talcott deposited $43,707.51 into the court registry. (ECF No. 20).  Talcott subsequently filed a motion for dismissal from further proceedings and discharge from further liability, and for attorney's fees and costs.  (ECF No. 25).  That motion was denied without prejudice.  (ECF No. 49).

American General likewise filed an interpleader action against the Defendants.  (ECF No. 30).  At the time the complaint was filed, the annuity was valued at $8,862.28.  (ECF No. 30, at ¶10).  American General deposited $8,919.20 on June 29, 2020.  (*See* docket for Case No. 20-1840).

The two interpleader actions were consolidated.  (ECF No. 34).  American General moved for discharge, (ECF No. 47), but that motion was denied without prejudice.[2]  (ECF No. 49).

Ms. Carlyle filed two cross-complaints: regarding the Talcott Annuity action, (ECF No. 12), and the American General Annuity action, (ECF No. 33).  The Talcott Annuity action cross-complaint

---

[2] The motions for discharge were denied without prejudice because of deficient service on Defendant Martin.  Defendant Martin has since been served properly.  (ECF No. 65).

asserts three claims: (1) a declaratory judgment that Ms. Martin
has full and exclusive rights to all funds in the Talcott Annuity;
(2) fraud; and (3) conversion.  In support, she alleges that Mr.
Martin agreed to be removed as a co-owner of the Talcott Annuity
and that the two submitted paperwork requesting this change.  (ECF
No. 12, at ¶10).  A bank official, however, lost the paperwork,
and Mr. Martin was never removed as a co-owner.  (ECF No. 12, at
¶11).  Mr. Martin subsequently refused to sign off on a second
attempt to remove him as co-owner.  (ECF No. 12, at 12).  Sometime
after that, Mr. Martin submitted the surrender request to Talcott,
and forged Ms. Carlyle's signature twice—once on the surrender
request and again on the check issued by Talcott.  (ECF No. 12, at
¶27-34).  The American General action cross-complaint asserts a
single claim: a declaratory judgment that Mr. Martin fraudulently
obtained and disposed of the entirety of the funds of the Talcott
Annuity, and that as a result he should not be entitled to a
portion of the American General Annuity.  (ECF No. 33, at ¶ 25).

Previously, motions for entry of default were granted for
Talcott against Mr. Martin (ECF No. 49); American General against
Mr. Martin (ECF No. 68); and Ms. Carlyle against Mr. Martin on
both cross-complaints (ECF No. 68).  Ms. Carlyle's motions for

default judgment, however, were either denied due to defects in service of process, (ECF Nos. 15; 49), or deferred (ECF No. 68).[3]

Now pending are (1) Ms. Carlyle's second motion for default judgment against Mr. Martin; and (2) American General's second motion for discharge from liability.  Talcott has not re-asserted its motion to dismiss and for attorney's fees and costs, (ECF No. 25).  Talcott and Ms. Carlyle, however, seem to believe the motion to dismiss is still pending because it was previously denied without prejudice.  (ECF Nos. 70, at ¶9; 71, at 2).  As a result, Ms. Carlyle's motion for default judgment also asks for a partial denial of the motion to dismiss, and Talcott's opposition brief reiterates its arguments in favor of granting the motion to dismiss.  The motion to dismiss was denied, not deferred, and technically is not still pending.  (ECF No. 48, at 13).  Nonetheless, both parties clearly seek a final determination of whether Talcott will be discharged from further liability and whether Talcott will be paid fees and costs from the Talcott Annuity funds.  Talcott's opposition, (ECF No. 71), is construed as a motion to re-assert its motion to dismiss.

---

[3] The ruling was deferred because the status of Plaintiffs Talcott and American General had not been resolved, and because Defendant Carlyle had not submitted an affidavit indicating that Defendant Martin was (1) not an infant and (2) not incompetent. (ECF No. 68, at 5).

## II.   Standard of Review

An interpleader action involves two steps or stages. 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1714 (3d ed. 2001); *see Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F.Supp.2d 714, 717 (D.Md. 2009). In *Metro. Life Ins. Co. v. Vines*, No. WDQ-10-2809, 2011 WL 2133340, at *2 (D.Md. May 25, 2011), Judge Quarles explained them:

> During the first stage, it must be determined whether the stakeholder has properly invoked interpleader. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007); *Fed. Ins. Co. v. Parnell*, No. 6:09CV00033, 2009 WL 2848667, at *4 (W.D.Va. Sept. 3, 2009). The propriety of interpleader depends on whether the stakeholder "legitimately fears" multiple litigation over a single fund. The Court considers whether: (1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader. *High Tech.*, 497 F.3d at 641; *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).
>
> If interpleader is proper, the Court may direct the funds plus interest to be deposited with the Clerk, dismiss the stakeholder with prejudice and discharge it from all liability with respect to the deposited funds, and prohibit the claimants from initiating or pursuing any action or proceeding against the stakeholder regarding the relevant insurance policy or plan. *See, e.g., High Tech.*, 497 F.3d at 641; [*Companion Life Ins. Co. v. Haislett*, No. 3:10-1586-JFA, 2010 WL 3879338, at *3 (D.S.C. Sept. 28, 2010)].

> During the second stage, a scheduling order is issued and the case continues between the claimants to determine their respective rights. *See, e.g., Rhoades*, 196 F.3d at 600; *Leventis v. First Nat'l Ins. Co. of Am.*, No. 3:09-1561-JFA, 2010 WL 2595305, at *2 (D.S.C. June 23, 2010).  The claimants engage in the "normal litigation processes, including pleading, discovery, motions, and trial." *High Tech.*, 497 F.3d at 641.

In federal interpleader actions, a district court has the authority to:

> [I]ssue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.  . . .  Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.  Generally, the interpleader plaintiff will "admit liability, deposit the fund with the court, and be permitted to withdraw from the proceedings." *CMFG Life Ins. Co. v. Schell*, No. GJH-13-3032, 2014 WL 7365802, at *2 (D.Md. Dec. 22, 2014) (citing *J.G. Wentworth Origination, LLC v. Mobley*, 2012 WL 4922862 at *5 (D.Md. Oct. 12, 2012)); *see Parnell*, 2009 WL 2848667, at *4 ("[T]he Interpleader Act permits [the plaintiff] to [interplead] its [p]olicy limit and to obtain 'a discharge . . . from further liability' with prejudice, as well as a permanent injunction restraining claimants 'from instituting or prosecuting any

proceeding in any State or United States court affecting the'
[p]olicy."  (citations omitted)).

Section 1335(a) grants the district courts original
jurisdiction over interpleader claims involving at least $500.00
in funds or property and at least two claimants of diverse
citizenship.  *See Fidelity & Guar. Life Ins. Co. v. Harrod*, No.
05-cv-2732-CCB, 2006 WL 1911077, at *2 (D.Md. May 25, 2006) ("The
claimants must be at least minimally diverse.").

## III. Analysis

Defendant Carlyle opposes the discharge of Plaintiff Talcott,
but not Plaintiff American General.  (ECF Nos. 36; 69).  Defendant
Carlyle argues that interpleader was inappropriate, and that
Talcott is not entitled to attorney's fees and costs.  The
unopposed discharge of American General will be granted.  The
opposed discharge of Talcott will also be granted, as explained
below.

### A.   Propriety of Interpleader

Defendant Carlyle argues that interpleader was inappropriate
because there was not a legitimate fear of multiple litigation.
(ECF No. 36, at 2).  She supports this argument by asserting that
Defendant Martin had not asserted a claim of entitlement to the
fund, and that such a claim would not have had a legitimate basis
in law because he had already received and disposed of the funds
from the Talcott annuity.  (ECF No. 36, at 2).  Talcott argues in

response that Defendant Martin is a joint owner of the annuity and

has an equal right to the funds.   (ECF No. 43, at 5).   It also

argues that, even if Mr. Martin spent all the money from the

annuity plan, the bank put a hold on his account when it refunded

the annuity funds to Talcott.[4]   (ECF No. 43, at 6).

> Developed over six hundred years ago by the
> common law courts of England, interpleader is
> a procedure used to avoid excessive litigation
> in instances of multiple claimants to a single
> stake.    For   the   uncertain   stakeholder,
> interpleader  is  the  law's  answer  to  the
> mythical  dilemma  of  Scylla  and  Charybdis.
> Without the option of interpleading funds, and
> faced  with  genuinely  competing  claims  to  a
> stake,  the  stakeholder  is  left  with  the
> unappealing  prospect  of  either  choosing  one
> claimant  over  the  other  and  facing  action  by
> the  disappointed  suitor  or  holding  the  stake
> and awaiting suit by both.   The repository of
> the  Court  provides  the  stakeholder  with  the
> only  safe  harbor  when  caught  between  such  a
> rock and a hard place.

*Commerce Funding Corp. v. S. Fin. Bank*, 80 F.Supp.2d 582, 584-85

(E.D.Va. 1999) (citation omitted).   "The propriety of interpleader

depends  on  whether  the  [interpleader]  'legitimately  fears'

multiple litigation over" a single fund.   *Nash & Assocs., LLC v.*

*Gwynn*, No. 14-cv-0376-WDQ, 2014 WL 3428933, at *3 (D.Md. July 10,

---

[4] Talcott also asserts that Ms. Carlyle waived these arguments
when she failed to raise them in opposition to Talcott's motion
for leave to deposit the disputed funds in the court registry.
(ECF No. 43, at 7).   While true that assessing the appropriateness
of an interpleader typically occurs when deciding whether to order
deposit of funds, and Ms. Carlyle raised no challenge at that time,
the propriety of the interpleader will still be assessed on the
merits.

2014) (citing *High Tech.*, 497 F.3d at 642).  Section 1335 expressly provides that an interpleader action is appropriate to resolve *potential* claims.  *See id.* at *4 n.8 (citing to cases noting that "to sustain an interpleader, [the plaintiff] is required only to prove the existence of adverse claimants who *could* attempt to claim these funds").  "In order to achieve the important benefits of securing a prompt and inclusive determination in a single action of the rights of all the parties claiming an interest in the stake, courts should not hesitate to allow interpleader even when prospective claims are involved" as long as they do not "fall below any meaningful threshold level of substantiality."  7 Wright, Miller, & Kane, *supra* § 1707.

Talcott was justified in bringing an interpleader action. Talcott is a disinterested stakeholder seeking a judicial determination as to the proper claimant to the annuity's funds. Defendants remain joint-owners of the annuity, requiring joint approval of a surrender of the annuities funds.  (ECF No. 1-1, at 11).  Moreover, Defendant Martin told Talcott's investigator that he had an agreement with Defendant Carlyle entitling him to the entirety of the funds.  (ECF No. 35-2, at 5).  Thus, Talcott was potentially being asked not just to determine if the annuity funds should be divided evenly, but if the funds should be given only to one of the Defendants.

Talcott twice asked Defendants to reach a settlement regarding who was entitled to the funds, yet they did not. (ECF No. 1, at ¶23, 24, 27). That Defendant Martin disposed of the annuity funds is immaterial because Defendant Martin's bank refunded the value of the annuity funds to Talcott, apparently creating a deficit of roughly $43,000.00 in Mr. Martin's bank account. (ECF No. 35-2, at 4). It is likewise immaterial that Mr. Martin later failed to file a formal request for the funds in this proceeding, because interpleader was appropriate at the outset to resolve even potential claims. *C.f. Wells Fargo Bank, N.A. v. Eastham*, No. 16-cv-0386-DKC, 2016 WL 2625281, at *3 (D.Md. May 9, 2016) (finding plaintiff justified in bringing an interpleader action, even though all potential claimants appeared to agree that the same defendant was entitled to the disputed funds, because at the initiation of the action plaintiff had a legitimate fear that there may be multiple claimants). Defendant Carlyle does not challenge discharge on other grounds.

Plaintiff Talcott will be discharged from further liability regarding the Talcott Annuity funds and will be dismissed from this action. Defendants will be enjoined from instituting or prosecuting any further legal proceedings against Plaintiff Talcott arising out of the Talcott Annuity funds.

**B.    Plaintiff Talcott's Request for Attorney's Fees and Costs**

Plaintiff Talcott originally requested $3,375.00 in fees and $1,110.97 in costs, for a total of $4,485.97.[5]  (ECF No. 25, at 6).  It then requested an additional $1,375.00 in fees, which it had incurred in the preparation of its "Position Statement and Reply to the Partial Opposition."  (ECF No. 43, at 10).  That brings Talcott's fees request to $4,750.00, and its total request to $5,860.97.  It contends that the requested fees and costs are appropriate because interpleader is benefitting Ms. Carlyle, the fees and costs requested are modest and reflect a reduced hourly rate, and that a significant portion of the fees and costs are associated with obtaining service over Defendant Martin.  (ECF No. 43, at 8-9).  Talcott also asserts that Defendant Carlyle caused some of the fees to be incurred by prematurely filing her motion to consolidate the two interpleader cases, and thereafter filing a partial opposition to Talcott's motion to dismiss.  (ECF No. 43, at 9).

---

[5] There is a $200 discrepancy in the invoices submitted as attachments by Talcott.  The invoice attached to Talcott's motion for discharge and fees states that the fees due were $3,375.00. (ECF No. 25-1, at 3).  The invoice attached by Talcott to its reply brief states that the previous fees balance due was $3,575.00. (ECF No. 43-9, at 4).  It is not clear if this $200.00 discrepancy is intentional or accidental.  Talcott will be taken at its word that it is requesting $3,375.00.  (ECF No. 25, at 6).

Defendant Carlyle argues that Talcott's request does not meet the requirements of the "American Rule," because this was not an appropriate interpleader case.  (ECF No. 35, at 5).  Ms. Carlyle also asserts that the fees sought are "excessive and unreasonable and will take up a substantial portion of the impleaded funds." (ECF No. 35, at 5-6).  She specifically points to Talcott seeking reimbursement for spending $300 on serving process on Ms. Carlyle when she would have accepted process.

"Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Sprague*, 251 Fed.Appx. 155, 156 (4th Cir. 2007) (citations omitted).  District courts have the discretion to award fees when "the party initiating the interpleader is acting as a mere stakeholder, which means he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." *Rapid Settlements*, 672 F.Supp.2d at 722 (quoting *Safemasters Co. v. D'Annunzio & Circosta*, No. 93-cv-3883-K, 1994 WL 512140, at *5 (D.Md. July 18, 1994)).

> The theory behind the award of attorneys' fees in interpleader actions, an exception to the usual American rule by which parties generally bear their own legal costs, is that plaintiff by seeking resolution of the multiple claims

14

> to the proceeds benefits the claimants and
> that plaintiff should not have to absorb
> attorneys' fees in avoiding the possibility of
> multiple litigation.

*Aetna Life Ins. Co. v. Outlaw*, 411 F.Supp. 824, 826 (D.Md. 1976).

"The starting point for determining the proper amount of a fee

award is the lodestar, or the number of hours reasonably expended,

multiplied by a reasonable hourly rate."  *Mfrs. & Traders Trust

Co. v. Del Conca USA, Inc.*, No. 16-cv-3346-GJH, 2017 WL 3175567,

at *5 (D.Md. July 25, 2017) (cleaned up).  A stakeholder's recovery

is properly limited to work related to the interpleader process,

such as preparing the petition for interpleader, depositing the

contested funds with the court, and obtaining discharge from

liability and dismissal from the lawsuit.  *Bank of Am., N.A. v.

Jericho Baptist Church Ministries, Inc.*, No. 15-cv-02953-PX, 2017

WL 319521, at *2 (D.Md. Jan. 23, 2017).

Talcott is a disinterested stakeholder as it (1) acknowledges

that it has an obligation to pay the benefits under the annuity

contract and was prepared to do so; (2) has deposited the

interpleaded funds into the court registry; and (3) asks to be

relieved of further liability.  The fees and costs it requests are

based on the hours worked and fees expended in this action.  The

hourly rate of $250.00 is below the below the range of $300.00–

475.00 per hour suggested in Appendix B of the Local Rules for an

attorney with twenty or more years' experience.  *Mfrs. & Traders*

15

*Trust Co.*, 2017 WL 3175567, at *5 (finding hourly rates requested fell within range of presumptively reasonable rates, but adjusting number of hours worked because not all hours were related to interpleader action).

As already explained, interpleader was appropriate in this case.  Talcott made several efforts to resolve the dispute over who should receive the annuity funds before filing the interpleader action, including mailing letters to Defendants twice and asking them to settle their dispute.  *C.f. Mfrs. & Traders Trust Co.*, 2017 WL 3175567, at *5 (still awarding fees where court found that plaintiff could have done more to determine if interpleader was necessary); s*ee also* 7 Wright, Miller, & Kane, *supra* § 1719 (noting that courts often deny costs and fees when an interpleader brings an action "prematurely or without sufficient basis for believing that it will be subjected to multiple vexation").

Although Talcott's second request for fees goes beyond preparing the petition for interpleader, deposit of funds, and preparing the order of discharge, those fees were incurred while "attempting to secure [Talcott's] discharge from liability and dismissal from the interpleader action." *Jericho Baptist Church Ministries, Inc.*, 2017 WL 319521, at *3.  Moreover, Defendant Carlyle has not identified any hours for which Talcott seeks payment that are unrelated to the interpleader.  The only itemization Ms. Carlyle attempts to challenge is the $300.00 spent

16

on serving her.  It was not unreasonable for Talcott to serve her,
particularly given her prior failure to return the settlement
agreement to Talcott.

Finally, the amount requested is consistent with awards
previously permitted in other interpleader actions.  *See, e.g.*,
*Wanki*, 2019 WL 6684134, at *4 (awarding unopposed fees and costs
totaling $6,637.720 out of a fund of $34,850.51); *Mfrs. & Traders
Trust Co.*, 2017 WL 3175567, at *6 (awarding fees and costs of
$9,092.60 out of a fund of $302,662.69); *Sun Life Assur. Co. of
Canada v. Grose*, 466 F.Supp.2d 714, 717 (W.D.Va. 2006) (awarding
fees and costs of $3,200 out of a fund of $41,175.46).  Talcott's
request for fees and costs of $5,860.97 will be granted.

    **C.**    **Plaintiff Carlyle's Motion for Entry of Default Judgment**

Defendant Carlyle has, once again, filed a motion seeking the
entry of default judgment against cross-defendant Martin.  (ECF
No. 70).  Mr. Martin has not taken formal action in this case.
Ms. Carlyle's motion for default judgment cannot, however, be
resolved at this time.  Ms. Carlyle's purported affidavit, (ECF
No. 70-1), asserts that Mr. Martin is not an infant or incompetent,
but was not signed under the penalties of perjury.  28 U.S.C.
§ 1746.  Nor does the purported affidavit address whether Defendant
Martin is in military service.  *See* 50 U.S.C. § 3931.

Once that matter is corrected, judgment may be granted to Ms.
Carlyle.  Mr. Martin's default removes him as an adverse claimant,

17

leaving only Ms. Carlyle.  *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95-96 (2d Cir. 1983), cited in *Legacy Inv. & Mgmt., LLC v. Susquehanna Bank*, No. 12-cv-2877-WDQ, 2013 WL 6990367, at *2 (D.Md. Oct. 2, 2013).  *Accord Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n.4 (4th Cir. 1984) ("[I]f all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund.").

## IV.  Conclusion

For the foregoing reasons, Plaintiff American General's motion for discharge (ECF No. 69) will be granted.  Plaintiff Talcott will also be discharged, and fees and costs of $5,860.97 will be disbursed to it.  Defendant Carlyle's motion for default judgment will be deferred.  A separate order will follow.


_____
/s/
DEBORAH K. CHASANOW
United States District Judge
